UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
JOHN W. RICE, JR., individually and as )
personal representative of the estate of )
Helen Rice, )
)
    Plaintiff, )
)     Civil Action No.
    v. )     16-10478-FDS
)
SANTANDER BANK, N.A., )
)
    Defendant. )
———————————————————————— )


MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
TO DISMISS AND PLAINTIFF'S MOTION TO AMEND

SAYLOR, J.

This case arises out of a mortgage executed in June 2007 by John W. Rice and Helen

Rice, parents of plaintiff John W. Rice, Jr.  Defendant Santander Bank, N.A., the mortgagee,

initiated foreclosure proceedings in September 2015, although it has not scheduled a foreclosure

sale.  In response, Rice filed suit, contending that the mortgage is invalid.  Among other things,

Rice alleges that Santander induced his incapacitated parents into executing the mortgage to

secure a home equity line of credit.  Jurisdiction is based on diversity of citizenship.

The complaint asserts five claims:  (1) unlawful foreclosure in violation of Mass. Gen.

Laws ch. 244, § 14; (2) misrepresentation, deceit, and fraud; (3) estoppel; (4) violation of Mass.

Gen. Laws ch. 93A; and (5) declaratory judgment.[1]  Rice appears to assert all five claims both

—————————————————
[1] The complaint asserts that Mass. Gen. Laws ch. 241, § 14 is the cause of action for the unlawful
foreclosure claim.  That statute concerns remedies relating to real property, specifically indivisible land and

individually and as the personal representative of his mother's estate.

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Santander has moved to dismiss all five counts. Specifically, Santander contends that Counts Two and Four should be dismissed because they are barred by the relevant statutes of limitations and fail to plead facts with sufficient particularity. It further contends that Counts One and Three should be dismissed for failure to state a claim upon which relief can be granted, and that the dismissal of Counts One through Four warrants dismissal of the declaratory judgment claim in Count Five.

Rice has opposed Santander's motion and also moved for leave to amend the complaint under Fed. R. Civ. P. 15(a)(2).[2] Except for replacing Count Three, the estoppel claim, with a claim alleging slander of title, the two complaints appear to be identical. Ordinarily, a defendant's motion to dismiss would be superseded by the filing of an amended complaint. However, because the amended complaint does not add to the original complaint's factual allegations, and because Santander has contended in its reply that the additional slander of title claim should be dismissed for failure to state a claim, the Court will grant the motion to amend and deem the motion to dismiss to have been renewed. Accordingly, the Court will treat the amended complaint as asserting six claims collectively, and Santander's original motion and reply collectively as a renewed motion to dismiss.

For the following reasons, the motion to amend will be granted and the motion to dismiss will be granted in part and denied in part.

---

partition. The Court will assume that the complaint asserts a claim under Mass. Gen. Laws ch. 244, § 14, which concerns the procedure and notice required in foreclosure proceedings.

[2] Rice cites Rule 15(a)(2), which applies to "other cases" where a court should "freely give leave [to amend] when justice so requires." However, Rule 15(a)(1)(B) appears to be the applicable rule, because Rice requested leave to amend within 21 days of the filing of defendant's Rule 12(b) motion.

## I.     Background

Unless otherwise noted, the following facts are drawn from the complaint, documents referred to in the complaint, and official public records submitted by defendant.[3]

### A.     Factual Background

In 1959, John and Helen Rice purchased a property in Framingham, Massachusetts. (Compl. ¶ 3).  By 2006, they had paid off the mortgage and owed no debt on the property.  (*Id.* ¶ 4).  On March 20, 2006, they executed durable powers of attorney and named two of their children, Jacqueline Foster and John W. Rice, Jr., as their attorneys in fact.  (*Id. ¶* 5).  They listed their interest in the Framingham property in the power of attorney.  (*Id.* ¶ 6; Pl. Ex. A (power of attorney record)).  The parents also signed declarations of homestead in March 2006.  (Compl. ¶ 7).

By 2006, both parents had become incapacitated.  (*Id.* ¶¶ 8-9).  John suffered from a heart condition for several decades, which ultimately required major surgery and a rehabilitation stay in 2007.  (*Id.* ¶ 8).  He also spent several periods in nursing homes and hospitals.  (*Id.*). According to the complaint, "[d]uring this period of time," John "was not mentally stable."  (*Id.*). Helen experienced the onset of dementia in the early 1990s.  (*Id.* ¶ 9).  At some point in time, her condition became "permanent, degenerative, [] progressive[,] and of significant duration."  (*Id.*).

---

[3] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Public records submitted by defendant include the following:  Def. Ex. A (the mortgage); Def. Ex. B (the quitclaim deed from John and Helen Rice to Christopher Rice); Def. Ex. C (the quitclaim deed from Christopher Rice to himself and John W. Rice, Jr.); Def. Ex. D (the declaration of homestead by John W. Rice, Jr.); and Def. Ex. E (the probate court record stating that John W. Rice, Jr., is the personal representative for his mother's estate).  In addition, Defendant's Exhibits A and E are referred to in the complaint.

Case 1:16-cv-10478-FDS   Document 24   Filed 07/06/16   Page 4 of 16

On June 14, 2007, John and Helen executed a home equity line of credit mortgage on their home in Framingham with Santander Bank.  (*Id.* ¶ 10; Def. Ex. A (mortgage)).[4]  According to the complaint, neither of the two children who were attorneys-in-fact was aware of the execution of the loan documents.  (Compl. ¶ 10).  The note granted Santander a mortgage on the property in exchange for a $200,000 revolving line of credit.  (Def. Ex. A).  It appears that the entire amount, or at least a large portion of it, was borrowed, and that the loan is in default.  Who actually took out the money, and what happened to it, is not set forth in the complaint.

The complaint alleges that neither John nor Helen could have traveled to the bank to sign the mortgage note on that date because they were physically and mentally impaired.   (Compl. ¶ 11).  It further alleges that neither parent "would have had the required contractual capacity" to sign the note at that time, due to their mental and physical incapacity.  (*Id.* ¶ 12).

Soon after granting the mortgage to defendant, John and Helen Rice conveyed the deed to the property to another son, Christopher Rice, on August 16, 2007.  (Def. Ex. B (quitclaim deed)).  The deed was recorded with the registry of deeds on September 7, 2007.  (*Id.*).  The same day that his parents conveyed the title to him, Christopher Rice transferred the property to himself and his brother, John, Jr., as joint tenants with the right of survivorship.  (Def. Ex. C (quitclaim deed)).  That deed was recorded on October 1, 2007.  (*Id.*)

John Rice died on June 21, 2009, and Helen Rice died intestate on September 9, 2011.  (Compl. ¶¶ 13-14).  After Helen's death, John, Jr. began to "inquir[e] about the status of [her] estate."  (*Id.*).  According to the complaint, John, Jr. "was unaware of the 2007 mortgage until

---

[4] The mortgage was originally executed with Sovereign Bank.  (Compl. ¶¶ 10-11).  Sovereign Bank changed its name to Sovereign Bank, N.A., which later changed its name to Santander Bank, N.A.  (Def. Mem. 3).

after the death of his mother." (*Id.*).  However, he executed and recorded a declaration of homestead on the property on October 3, 2011.  That declaration noted "[f]or my title see Deed dated August 16, 2007 and recorded in Middlesex South District Registry of Deeds in Book 50172 Page 069." (Def. Ex. D (declaration of homestead)).  His brother Christopher, who lived in the house on the property, died on June 1, 2012.  (Compl. ¶ 15).  After his death, John, Jr. "again began inquiring about the status of his mother's estate." (*Id.*).

The complaint does not allege what specific inquiries were made, or when or how John, Jr. became aware of the existence of the 2007 mortgage.  According to the complaint, on June 25, 2012, he began attempting to contact Santander "about the alleged loan of which he had no previous knowledge." (*Id.* ¶ 16).  Also on June 25, 2012, counsel for John, Jr. sent a letter to Santander, informing the bank that John Rice, Sr., had passed away and that there had not been a mortgage on the house as of June 13, 2007.  (*Id.* ¶ 18; Pl. Ex. E (letter)).  In that letter, he requested copies of his parents' bank records.  (Compl. ¶ 19).  John, Jr. did not receive a response from Santander.  (*Id.* ¶ 20).  He sent another letter to Santander on August 10, 2012, again requesting copies of his parents' bank records.  (*Id.* ¶¶ 21-22).  He again did not receive a response.  (*Id.* ¶ 23).

On December 15, 2013, John, Jr. sent a demand letter to Santander.  (*Id.* ¶ 17, Pl. Ex. C). On August 14, 2014, he received a mortgage default letter from Santander concerning the 2007 mortgage on the property.  (Compl. ¶ 24).  On September 19, 2014, he sent another letter to Santander's representative, both pursuant to Mass. Gen. Laws ch. 93A, § 9.  (*Id.* ¶ 17; Pl. Ex. D).

Santander began foreclosure proceedings on September 22, 2015.  (Compl. ¶ 28).  It filed a complaint for foreclosure on September 29, 2015. (Am. Compl. ¶ 37).  It has not yet foreclosed

on the property or scheduled a foreclosure sale.

John, Jr. was not appointed as the personal representative for his mother's estate until December 15, 2015.  (Compl. ¶ 1; Def. Ex. E (probate court record)).  There is nothing in the record indicating whether he is the representative for his father's estate.

### B.    Procedural Background

Plaintiff filed suit in state court on February 9, 2016.  Santander removed to this Court on March 8, 2016.  Santander has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  Plaintiff has opposed that motion and moved for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).[5]

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary

---

[5] Plaintiff did not formally move for leave to amend the complaint.  Rather, in his opposition to defendant's motion, he requested leave to amend and filed a proposed amended complaint.

6

to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Under Fed. R. Civ. P. 9(b), the pleading standard for allegations of fraud is higher than the normal pleading standard. To survive a motion to dismiss, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

III.   **Analysis**

Santander has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). It contends that Counts One and Three should be dismissed because they fail to state a claim upon which relief can be granted. It contends that Counts Two and Four should be dismissed because they are barred by the relevant statutes of limitations. It further contends that Count Two should be dismissed also because it does not plead fraud with sufficient particularity, and that Count Four should be dismissed for failure to state a claim. Finally, it contends that the dismissal of Count Five is warranted by the dismissal of Counts One through Four. Santander's motion, however, does not distinguish plaintiff's individual claims from those claims brought on behalf of his mother's estate.

Plaintiff contends, among other things, that the limitations period for Counts Two and Four did not begin to run until August 14, 2014, when he received a letter from a representative of Santander stating that the mortgage was in default. In addition to opposing the motion, Rice has moved for leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2). His proposed amended complaint replaces the estoppel claim in Count Three with a claim for slander of title. The proposed amended complaint is otherwise identical to the original complaint. In its reply,

7

Santander contends that plaintiff's slander of title claim, which the Court will treat as a sixth claim, should also be dismissed for failure to state a claim upon which relief can be granted.

## A.      Count One:  Unlawful Foreclosure

Both plaintiff's individual claim for unlawful foreclosure in Count One, as well as the same claim brought on behalf of his mother's estate, will be dismissed because the complaint fails to allege sufficient facts to state a claim under Mass. Gen. Laws ch. 244, § 14, and also because Santander has not foreclosed on the property.

Mass. Gen. Laws ch. 244, § 14 refers to the notice procedures that a mortgagee is required to perform before a foreclosure sale can occur.  The statute includes a requirement that the mortgagee publish notice in a newspaper each week for at least three weeks in advance of the beginning of foreclosure sale.  *Id.*  However, both the original and proposed amended complaints fail to include any specific allegations as to how Santander failed to comply with the notice provisions of the statute.  The complaint simply states in a conclusory fashion that Santander's foreclosure was "unlawful" because "it did not have the authority."  (Compl. ¶¶ 28-29).  Such vague and conclusory allegations are insufficient to state a claim under the statute.

Perhaps more importantly, Santander has not even scheduled a foreclosure sale.  The statute requires that a mortgagee publish notice for three successive weeks, "the first publication of which shall be not less than 21 days *before the day of sale*."  Mass. Gen. Laws ch. 244, § 14 (emphasis added).  It is difficult to imagine how Santander could be liable under the statute for failing to publish notice 21 days before the foreclosure sale if it has not scheduled a sale. Therefore, Count One will be dismissed as to both plaintiff's individual claim and that on behalf of his mother's estate.

### B.    Count Two:  Misrepresentation, Deceit, and Fraud

### 1.    Statute of Limitations

Count Two alleges a claim for misrepresentation, deceit, and fraud.  The limitations period for tort claims, including fraud, is three years.  Mass. Gen. Laws ch. 260, § 2A; *see Pilalas v. Cadle Co.*, 695 F.3d 12, 14 (1st Cir. 2012) (noting that the "limitations period under [Massachusetts] state law is three years for fraud"); *Charest v. President & Fellows of Harvard Coll.*, 2016 WL 614368, at *13 (D. Mass. Feb. 16, 2016) ("Claims for breach of fiduciary duty, tortious interference with contract, and fraud must be brought within three years.").  The limitations period begins to run on "the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by defendant's conduct."  *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 205-06 (1990).

Here, plaintiff should have been on notice that he may have been harmed by Santander's allegedly fraudulent conduct, at the latest, shortly after he started inquiring into his mother's estate after her September 2011 death.  In fact, plaintiff was on inquiry notice of the alleged fraudulent mortgage—which defendant recorded—by October 2011, when he executed and recorded a declaration of homestead.  Furthermore, by June 25, 2012, he was actually aware of the mortgage and was in contact with Santander about the loan.  No matter which of these dates marked the beginning of the statutory period, the limitations period had expired well before plaintiff filed his complaint in February 2016.  Accordingly, Count Two will be dismissed as to plaintiff's individual claim.[6]

---

[6] Although he does not do so in his opposition, plaintiff could arguably contend that he did not have standing to file a claim against Santander until his parents died.  However, once the deed to the property was conveyed to plaintiff, he would have had standing to file a claim against Santander seeking a declaratory judgment that the mortgage was void for fraud.  *See, e.g.*, *RFF Family P'ship, LP v. Link Dev., LLC*, 849 F. Supp. 2d 131, 136

However, the estate's claim for fraud cannot be dismissed based on the statute of limitations. Although plaintiff did not explicitly advance the following argument, the facts pleaded in the complaint are sufficient to warrant tolling of the limitations period until his mother's death.

The complaint alleges that Helen Rice began to experience dementia in the 1990s, and was incapacitated by 2006, a year before the execution of the 2007 mortgage. If that allegation is true, which the Court must assume at this stage of the proceedings, the limitations period would have been tolled until her death. Under Mass. Gen. Laws ch. 260, § 7, if a person is "incapacitated by reason of mental illness" at the time that a claim accrues, the limitations period begins to run only when such a disability is removed. The standard for determining whether a person's mental illness amounts to incapacitation and thus tolls the limitations period under ch. 260, § 7 is whether it "precludes a plaintiff from 'understanding the nature or effects of his acts and thus prevents him from comprehending his legal rights.'" *Gauhier v. United States*, 2011 WL 3902770, at *4 (D. Mass. Sept. 2, 2011) (quoting *McGuinness v. Cotter*, 412 Mass. 617, 624 n.9 (1992)).

According to the complaint, plaintiff's mother was diagnosed in the 1990s with dementia that was "permanent, degenerative, [] progressive[,] and of significant duration," and that it was severe enough that she was incapacitated by 2006. (Compl. ¶¶ 8-9). Because the statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c)(1), a complaint should ordinarily

---

(D. Mass. 2012) (rejecting argument that a non-party to a mortgage agreement does not have standing to contest the mortgage encumbering its land). It is well-established that "[a] property owner such as [plaintiff] has standing to contest the validity of a mortgage encumbering its property, even if it was not a party to the mortgage agreement, because the encumbrance directly impacts the property's marketability and value." *Id.* (citing *Bailey v. Way*, 266 Mass. 437, 441 (1929)).

survive a motion to dismiss based on a statute-of-limitations defense unless "the pleader's allegations 'leave no doubt that an asserted claim is time-barred.'" *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).  At this stage of the proceedings, the Court must accept the complaint's allegations as true, and it certainly cannot conclude on the present record that plaintiff's mother was not incapacitated under ch. 260, § 7.  Accordingly, at this stage of the case, it appears that Helen Rice's claim for fraud did not accrue until she died in 2011.

## 2.      Rule 9(b)

Fed. R. Civ. P. 9(b) imposes a heightened pleading standard on fraud claims.  In order to meet that burden, a complaint must provide "specification of the time, place, and content of an alleged false representation."  *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980).  The complaint here simply alleges the following:

> 32.  By their statements and conduct, the Defendants induced the Plaintiff Estate to enter into a mortgage loan regarding the Property and falsely and fraudulently represented that the loan was commercially reasonable and that the Estate was capable of repayment of same.
>
> 33.  All Defendants by the foregoing actions, statements and inactions, made many false, fraudulent and/or willful misrepresentations of fact, upon which the Plaintiff[] Estate relied, and as a result of that reliance the Plaintiff was damaged.

(Compl. ¶¶ 32-33).

Those vague and conclusory allegations fall far short of pleading fraud with sufficient particularity.  Among other things, the complaint fails to allege the specific content of Santander's allegedly fraudulent statement; when that statement was made; where it was made; or to whom it was made.  Put another way, even if the Court assumes (as it must) that Santander unfairly took advantage of his incapacitated parents, that alone is not enough to state a claim for

fraud with particularity—even though the conduct may well have been fraudulent, and may otherwise be actionable.  Rule 9(b) requires specificity, and those allegations are not sufficiently specific to satisfy the standard.  Accordingly, the complaint's claim for fraud on behalf of the estate will be dismissed for failure to comply with Rule 9(b).

## C.     Count Four:  Chapter 93A

Count Four alleges a claim under Mass. Gen. Laws ch. 93A.  The limitations period for claims arising under Mass. Gen. Laws ch. 93A is four years.  Mass. Gen. Laws ch. 260, § 5A.  A Chapter 93A claim accrues "when plaintiff knows or reasonably should have known of the harm attributable to defendant's conduct."  *Paterson-Leich Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 994 (1st Cir. 1988).

As noted above, plaintiff should have been on notice of the potential harm by Santander no later than October 2011, when he recorded a declaration of homestead and had begun inquiring into his mother's estate.  Accordingly, the four-year limitations period had expired by the time plaintiff filed suit in February 2016, and plaintiff's individual claim in Count Four will be dismissed.

However, plaintiff's claim as personal representative of his mother's estate does not appear to be time-barred, at least at this stage of the case.  As discussed above, the complaint alleges facts about Helen Rice's dementia that are sufficient to justify tolling the limitations period for incapacitation under Mass. Gen. Laws ch. 260, § 7, from the date of the mortgage in June 2007 until her death in September 2011.  Moreover, in Massachusetts, there are three periods in which a claim can be brought on behalf of a deceased person:  (1) during "the period within which the deceased might have brought the action;" (2) within two years of an

12

administrator or executor of the estate "giving bond for the discharge of his trust;" and

(3) "within three years from the date when the executor or administrator knew, or in the exercise

of reasonable diligence, should have known of the factual basis for a cause of action."  Mass.

Gen. Laws ch. 260, § 10.  For reasons that are not disclosed in the record, plaintiff was not

appointed personal representative of his mother's estate until December 2015, more than four

years after her death.   Nonetheless, a Chapter 93A claim could not have been brought on behalf

of her estate until some individual was appointed personal representative.  Accordingly, plaintiff

had two years from the time he was appointed personal representative of his mother's estate to

file the Chapter 93A claim.  *See* Mass. Gen. Laws ch. 260, § 10.  Because he filed suit in

February 2016, just three months after he was appointed as personal representative of his

mother's estate, the Chapter 93A claim does not appear to be time-barred.

Defendant also contends that Count Four should be dismissed for failure to state a claim.

However, the complaint alleges that defendant was engaged in business during the relevant time

period, and further alleges that it engaged in several acts that, if proved true, would qualify as

unfair or deceptive under Chapter 93A.  For example, the complaint alleges that defendant

fabricated signatures, (Compl. ¶ 43) and that it fraudulently executed the mortgage knowing that

plaintiff's parents "did not have the mental capacity to sign a contract" at the time.  (*Id.* ¶ 46).

Those allegations, taken as true, are sufficient to overcome a motion to dismiss.  Therefore,

defendant's motion to dismiss the estate's Chapter 93A claim will be denied.[7]

---

[7] There appears to be some question whether Helen Rice's Chapter 93A claim survives her death.  Under the Massachusetts survival statute, actions which survive under common law (such as contract actions) and certain tort actions survive a plaintiff's death.  *See* Mass. Gen. Laws ch. 228, § 1 (allowing actions of tort for assault, battery, imprisonment, other damage to the person, conversion, and damage to real or personal property to survive).  In *Kraft Power Group v. Merrill*, the SJC held that "a cause of action brought under [Chapter 93A] will survive if it is, in essence, contractual"; the court reasoned that, at common law, actions in contract survived the death of a party.  464 Mass. 145, 149-50, 157 (2013).  In *Klairmont v. Gainsboro Rest., Inc.*, the SJC held that a Chapter 93A claim

D.      **Count Three:  Estoppel**

Although it is unclear on the face of the original complaint, it appears that Count Three

asserts a claim for estoppel based on the claims asserted in Counts One, Two, and Four.  Because

plaintiff failed to state any actionable claim for relief in Count One for unlawful foreclosure, in

Count Two for fraud, or in Count Four under Chapter 93A, the original complaint's Count Three

will be dismissed.  However, because the estate's Chapter 93A claim will survive defendant's

motion, defendant's motion as to the estate's estoppel claim in Count Three will be denied.

E.      **Count Five:  Declaratory Judgment**

Count Five seeks a declaration that the mortgage note is invalid due to plaintiff's parents'

lack of mental capacity to enter into a contract.  Although it is unclear on the face of the

complaint, Count Five is presumably based on the fraud alleged in Count Two or the unfair and

deceptive practices alleged in Count Four.  Because the other claims in plaintiff's individual

capacity will be dismissed, there is no basis for granting a declaratory judgment for plaintiff in

his individual capacity.  Accordingly, Count Five will be dismissed as to plaintiff's individual

claim.  However, because defendant's motion to dismiss will be denied as to the estate's claims

in Counts Three and Four, the estate's claim for a declaratory judgment will survive.

F.      **Amended Count Three:  Slander of Title**

There is only one difference between plaintiff's original complaint and the proposed

amended complaint, and there appear to be no additional factual allegations.  In his proposed

amended complaint, plaintiff replaces his estoppel claim with a claim for slander of title.  In its

---

arising from a dangerous condition in the defendant's restaurant survived the death of the plaintiff, where the claim
"present[ed] a cause of action substantively akin to the types of torts within the scope of" the survival statute.  465
Mass. 165, 179 (2013).  Because the issue appears to be a fact-specific inquiry that has not been addressed by the
parties, the Court will not address the survivability of the Chapter 93A claim at this stage of the case.

reply, Santander contends that plaintiff's additional claim should be dismissed because the factual allegations do not support a claim for slander of title. The Court will treat plaintiff's slander of title claim as a sixth claim and defendant's reply as a renewed motion to dismiss that claim.

Slander of title is a type of defamation claim in which a person makes a false statement specifically related to the plaintiff's title to property. In order to sustain a claim for slander of title, a plaintiff must show that "(1) the defendant made a false statement, (2) which was published with malice, and (3) caused injury to the plaintiff." *George v. Teare*, 2000 WL 1512376, at *3 (Mass. Sup. Ct. Sept. 5, 2000); *see also Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 37-38 (D. Mass. 2014); *Rosa v. Mortgage Elec. Sys., Inc.*, 821 F. Supp. 2d 423, 434 (D. Mass. 2011); *CMI Assocs., LLC v. Regional Fin. Co., LLC*, 775 F. Supp. 2d 281, 289 (D. Mass. 2011).

Here, the complaint fails to allege facts that would satisfy any of those three requirements. Plaintiff contends that the publication of a mortgage foreclosure complaint in September 2015 gave rise to this claim. Although the complaint alleges that Santander obtained the mortgage fraudulently, it does not allege that the mortgage complaint was false. More importantly, the complaint contains no allegations that would suggest Santander published the mortgage complaint with malice. Moreover, the complaint does not allege any harm to plaintiff that resulted from Santander's publication of the mortgage foreclosure complaint. In order to support a claim for slander of title, the loss sustained by the plaintiff must be pecuniary. *CMI Assocs.*, 775 F. Supp. 2d at 289. The complaint alleges that, due to the publication, attorneys and real estate brokers sent plaintiff letters. Receiving letters, however, is not a pecuniary harm.

Accordingly, Count Three of the amended complaint will be dismissed in its entirety.

**IV.**   **Conclusion**

For the foregoing reasons:

1.   Plaintiff's motion to amend to add a claim for slander of title is GRANTED.

2.   Defendant's motion to dismiss is GRANTED as to plaintiff's claims in his individual capacity.

3.   Defendant's motion to dismiss is GRANTED as to the estate's claims for unlawful foreclosure (Count One), fraud (Count Two), and slander of title (Amended Count Three), and otherwise DENIED.

**So Ordered.**

<u>/s/ F. Dennis Saylor</u>
F. Dennis Saylor IV
Dated: July 6, 2016                    United States District Judge